

# NUMBER 13-18-00412-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

EDINBURG CONSOLIDATED INDEPENDENT
SCHOOL DISTRICT AND MIKE MORATH,
COMMISSIONER OF EDUCATION FOR THE
STATE OF TEXAS,                                                    Appellants,

v.

CRISTINA L. ESPARZA,                                               Appellee.

On appeal from the 275th District Court
of Hidalgo County, Texas.

# OPINION

Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Opinion by Chief Justice Contreras

This appeal stems from the termination of appellee Cristina L. Esparza's term

employment contract with Edinburg Consolidated Independent School District (ECISD)

pursuant to Chapter 21 of the Texas Education Code. *See* TEX. EDUC. CODE ANN. ch. 21.[1] Appellants ECISD and Mike Morath, Commissioner of Education for the State of Texas (Commissioner),[2] challenge the trial court's order reversing the Commissioner's decision upholding the termination of Esparza's contract as the principal for Barrientes Middle School in Edinburg, Texas. By two issues, ECISD argues that (1) it did not act arbitrarily, capriciously, or unlawfully when it concluded there was good cause to terminate Esparza's contract; and (2) the trial court erred in ordering ECISD to reinstate Esparza and reimburse lost wages and benefits. By two issues, the Commissioner argues that (1) the trial court erred when it rejected the Commissioner's interpretation of the 2011 statutory amendments to the Texas Education Code's "good cause" analysis; and (2) the trial court erred in reversing the Commissioner's decision because it was supported by substantial evidence. We reverse the district court's judgment and render judgment affirming the Commissioner's decision.

## I.  STATUTORY SCHEME

To provide context for the factual and procedural background of this case, we begin by explaining the statutory scheme available to Esparza to contest the termination of her employment contract.

Texas public school districts "shall employ each teacher, principal, librarian, nurse, and school counselor" under one of three different contracts: (1) a probationary contract,

---

[1] Chapter 21 of the education code is entitled "Educators" and covers everything associated therewith. *See* TEX. EDUC. CODE ANN. §§ 21.001–.806.

[2] "The Texas Constitution requires the Legislature to 'establish and make suitable provision for the support and maintenance of an efficient system of public free schools.'" *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 545 & n.5 (Tex. 2016) (quoting TEX. CONST. art. VII, § 1). "To fulfill this duty, the Legislature has established the Texas Education Agency (TEA), the office of the Commissioner of Education, the State Board of Education (SBOE), and local school districts throughout the state." *Id.*

(2) a continuing contract, or (3) a term contract. *Id.* § 21.002(a)–(b); *see also id.* § 21.201(3) (defining "term contract" as "any contract of employment for a fixed term between a school district and a teacher"). After receiving notification of a proposed decision by the school board to terminate a contract, a "teacher"[3] may request a hearing before an independent hearing examiner (IHE) assigned by the Commissioner. *See id.* §§ 21.251–.254. This hearing is evidentiary and resembles a trial to a judicial court.[4] *See id.* §§ 21.255–.256. At the conclusion of the hearing, the IHE issues a written recommendation that includes findings of fact and conclusions of law and, if the examiner so chooses, a proposal for granting relief. *See id.* §§ 21.255–.257.

Subsequently, a school district's board of trustees considers the recommendation of the IHE and the record of the hearing and allows each party to present oral argument. *See id.* § 21.258. The statute mandates that the board announce a decision that includes findings of fact and conclusions of law. *See id.* § 21.259(a)(1). As provided by the statute, a determination by the IHE "regarding good cause" for termination is a conclusion of law and a school district's board "may adopt, reject, or change" an IHE's conclusions of law,

---

[3] "Teacher" means "a superintendent, *principal*, supervisor, classroom teacher, school counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B or a nurse." TEX. EDUC. CODE ANN. § 21.201(1) (emphasis added).

[4] Subchapter F of Texas Education Code chapter 21

charges the hearing examiner with conducting a hearing "in the same manner as a trial without a jury in a district court"; the Texas Rules of Evidence apply, the proceedings are recorded, the school district has the burden of proof by a preponderance of the evidence, and the teacher has the right to be represented by counsel, hear the evidence supporting the charges, cross-examine adverse witnesses, and present evidence of his or her own.

*Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000) (citing TEX. EDUC. CODE ANN. § 21.256).

3

regardless of whether the conclusion is supported by substantial evidence.[5] *See id.* §§ 21.257(a-1), 21.259(b)(1); *see also Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000) ("The ability to reject or change conclusions of law preserves a school board's authority and responsibility to interpret its policies."). The school district's board must announce its decision and the board is required to "state in writing the reason and legal basis for a change or rejection" made to a conclusion of law or a finding of fact. TEX. EDUC. CODE ANN. § 21.259(d).

A party aggrieved by the board's decision may then appeal the decision to the Commissioner, who reviews the record of the examiner's hearing and the oral argument before the board, along with the parties' written argument and, in some instances, hears oral argument. *See id.* § 21.301(c). The Commissioner may not substitute his or her judgment for that of the board unless the board's decision is: (1) arbitrary, capricious, or unlawful; or (2) not supported by substantial evidence. *Id.* § 21.303(b)(1). The Commissioner may not reverse a decision of a school board based on a procedural irregularity or error by the board unless the Commissioner determines that the irregularity or error was likely to have led to an erroneous decision. *Id.* § 21.303(c). The Commissioner must also issue a written decision that includes findings of fact and conclusions of law. *See id.* § 21.304.

Either party may appeal the Commissioner's decision to a district court. *See id.* § 21.307 (providing for judicial review of the Commissioner's decision). The court shall review the evidentiary record made at the local level and may not take additional

---

[5] In contrast, a school board is permitted to change a finding of fact only if "the finding of fact is not supported by substantial evidence." TEX. EDUC. CODE ANN. § 21.259(c).

4

evidence. *Id.* § 21.307(e). "The court may not reverse the decision of the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law are erroneous." *Id.* § 21.307(f). The court may not reverse a decision of the Commissioner based on a procedural irregularity or error by the IHE, a board of trustees or board subcommittee, or the Commissioner unless the court determines that the irregularity or error was likely to have led to an erroneous decision by the Commissioner. *Id.* § 21.307(g).

## II. BACKGROUND

On August 25, 2016, ECISD sent Esparza a letter notifying her that the district's superintendent, Rene Gutierrez, recommended to the board of trustees that her contract be terminated. Specifically, the letter provided:

> After a review of the factual background discussed below, the Board determined that the public outcry concerning the facts summarized below, as well [as] their notoriety within the Barrientes Middle School and greater Edinburg CISD school communities have undermined your ability to be an effective administrator for the District to such an extent so as to constitute good cause for the termination of your term employment contract with the District.
>
> . . . .
>
> Under District Policy DH (Legal) ECISD employees are required to comply with standard practices and ethical conduct towards students, professional colleagues, school officials, parents, and members of the community.
>
> Employees of ECISD are expected to meet professional standards in their use of electronic media and for any other public conduct. By taking a nude photo of herself with a cell phone, and then allowing such photo to be released throughout the ECISD community, Ms. Esparza's actions have interfered with her ability to effectively perform her job duties as a Principal of Barrientes Middle School. In this regard, it is irrelevant to the inquiry whether the release of the photograph by Ms. Esparza was a voluntary act, or was the result of an unauthorized access to her personal data storage devices. The fact remains that a voluntarily taken photograph originally taken by Ms. Esparza has entered the public domain and has become an

5

object of great controversy in the school community. The controversy is being driven by the mere existence of the photograph in the public domain, and not the "fault" of whoever caused its release which is the subject of the Board's concerns.

. . . .

Each ECISD employee is required to comply with the standards of conduct set out in District policy and with any other policies, regulations, and guidelines that impose duties, requirements, or standards attendant to his or her status as a District employee. Violation of any policies, regulations, or guidelines may result in disciplinary action, including termination of employment. ECISD policy can be violated through employee use of electronic media including all forms of social media, such as text messaging, instant messaging, electronic mail (e-mail), Web logs (blogs), electronic forums (chat rooms), video-sharing websites, editorial comments posted on the Internet, and social network sites. Electronic media also includes all forms of telecommunication, such as landlines, cell phones, and Web-based applications.

ECISD employees are held to the same professional standards in his or her public use of electronic media as for any other public conduct. If an employee's use of electronic media violates state or federal law or District policy, **or interferes with the employee's ability to effectively perform his or her job duties, the employee is subject to disciplinary action, up to and including termination of employment.**

. . . .

By engaging in the conduct described above, Ms. Esparza's conduct and comportment fell below the following standards promulgated by the State Board for Educator Certification (SBEC) in the Educator's Code of Ethics . . .; Tex. Educ. Code § 21.041(8); 19 Tex. Admin. Code § 247.1(b), (c),[6] to wit:

---

[6] Chapter 247 of the Texas Administrative Code is titled "Educators' Code of Ethics." *See* 19 TEX. ADMIN. CODE ANN. ch. 247. It provides in part:

The Texas educator shall comply with standard practices and ethical conduct towards students, professional colleagues, school officials, parents, and members of the community and shall safeguard academic freedom. The Texas educator, in maintaining the dignity of the profession, shall respect and obey the law, demonstrate personal integrity, and exemplify honest and good moral character. The Texas educator, in exemplifying ethical relations with colleagues, shall extend just and equitable treatment to all members of the profession. The Texas educator, in accepting a position of public trust, shall measure success by the progress of each student toward realization of his or her potential as an effective citizen. The Texas educator, in fulfilling responsibilities in the community, shall

6

> Standard 1.10.  The educator shall be of good moral character and be worthy to instruct or supervise the youth of this state.
>
> Standard 3.8.  The educator shall maintain appropriate professional educator-student relationships and boundaries based on a reasonably prudent educator standard.
>
> After considering the foregoing facts, law and policies, the Board of Trustees voted to propose termination of Ms. Esparza's employment contract based upon the fact that there was "good cause" to support its actions.

(emphasis in original).

Esparza appealed the board's proposed termination and requested a hearing before an IHE. *See id.* § 21.251(a)(2). An IHE was assigned and a hearing held on the matter. On December 26, 2016, the IHE issued her decision, including findings of fact, conclusions of law, and a recommendation, which we summarize below.

## A. IHE's "Findings of Fact"

Esparza was hired by ECISD in 2002. Starting in January of 2012, she was employed as the principal of Francisco Barrientes Middle School. ECISD renewed Esparza's contract as a "Certified Administrator" for the school for the years 2016–2018. During her fourteen years with ECISD, Esparza was an exemplary employee, fulfilling all job duties and responsibilities, meeting all requirements, and exceeding expectations.

Sometime during 2015, "Esparza took a nude photo of herself (a 'selfie' . . .) in the bathroom of her own home using the cameral [sic] in her personal cellular phone."

---

cooperate with parents and others to improve the public schools of the community. This chapter shall apply to educators and candidates for certification.

*Id.* § 247.1(b).

7

Esparza sent the photo via text message to her husband who worked away from home in the oil fields and retained a copy in her phone.

On June 14, 2016, Esparza's daughter informed her that the nude photo was being circulated on social media. That same day, Esparza reported the unauthorized dissemination of the photo to her immediate supervisor, Rebecca Morrison, and ECISD's superintendent, Gutierrez. Upon the advice and suggestion of Morrison and Gutierrez, Esparza reported the "theft or hacking of her nude photo to local law enforcement authorities."

The IHE found that Esparza's nude photo began to circulate among some of the students at Barrientes Middle School and through social media "a long time" before the end of the 2015–2016 school year and that, in June 2016, the photo was "being passed around by some students and was also seen by some staff, as well." However, Esparza did not intend for the picture to be viewed by any person other than her husband, and she did not use "any type of social media account" or "engage in online exchange of information or photographs via social media outlets." The IHE found that Esparza was the victim of a crime, a third party was responsible for the circulation of Esparza's nude photo, and the dissemination was done without her knowledge and consent.

On or about June 22, 2016, a student's parent inquired or complained[7] about whether ECISD was aware of Esparza's circulating nude photo. As a result, ECISD's police department initiated an investigation, which revealed Esparza "did not do anything

[7] The IHE noted that "[d]iscussion was had as to whether [the parent's] call was a complaint or an inquiry [but that the] semantics make no difference. However it is labeled, said call did commence a police investigation."

8

wrong." Further, the student's parent refused to name the individual who sent her the photo and failed to show up for a police interview.

On June 23, 2016, Esparza was suspended with pay "to remove her and to administratively look into the matter because the nude photo was becoming a distraction, they were getting a lot of calls from the media, and it evolved into a problem." Prior to June 23, "there was zero community outcry or outrage due to the unauthorized dissemination of Ms. Esparza's nude photo" and "there was no media coverage about Ms. Esparza's nude photo." Beginning on June 29, 2016, Gutierrez "received calls, texts, or emails from several media sources" as various media outlets reported on the story of the disseminated nude photo. On July 20, 2016, Gutierrez sent Esparza a notice of reassignment because her photo "was evolving more in social media and it had gone viral."[8] Gutierrez recommended to the ECISD school board that Esparza's contract be terminated because Esparza "could not be an effective administrator" due "to the dissemination of the nude photo, all the media attention, and that the photo had gone viral." In Gutierrez's opinion, the student-educator boundaries had been compromised with the nude photo so that Esparza could not be an effective administrator. The school board accepted Gutierrez's recommendation.

Under the section entitled "Findings of Facts," the IHE also noted the testimony of school board member Oscar Salinas, who voted to support the proposal to terminate

---

[8] There is no evidence that Esparza was ever reassigned to a different position or what the duties of the position would have entailed, and we previously concluded that "Esparza's reassignment was never finalized." *Edinburg Cons. Indep. Sch. Dist. v. Esparza*, No. 13-18-00540-CV, 2019 WL 3953111, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2019, no pet.) (mem. op.) (affirming trial court's denial of ECISD's plea to the jurisdiction); *see also* 19 TEX. ADMIN. CODE ANN. § 157.1051(b) (stating that the Commissioner "will not consider any issue not raised in the petition for review"). The notice stated: "This assignment is effective immediately. Since you are currently on administrative leave, you will be contacted at a later time concerning your employment status."

Esparza's contract. In sum, Salinas supported termination because Esparza would be ineffective in light of "the complaints and the media attention" and because about twenty of twenty-five people he spoke to in passing "had negative sentiment as having lost respect for" Esparza. According to Salinas, the community interest in the dissemination of the photo was high and he believed "Esparza's nude picture will always come into people's minds—they would degrade her, make fun of her, or be insubordinate to her."

In a separate section labeled "credibility findings," the IHE stated that "there was no evidence of incidences of ineffectiveness *up to the day* [Esparza] *was suspended with pay.*" (emphasis added). Further, the IHE found that "the ECISD witness[es]' opinion testimony about ineffectiveness is based on conjecture and speculation" and concluded that several "calls from media sources, one parent inquiry or complaint, and tenor in the community about Ms. Esparza's nude photo do not suffice to establish Ms. Esparza's ineffectiveness as an administrator."

## B. IHE's "Conclusions of Law"

The IHE concluded that Esparza "did not fail to comply with standard practices and ethical conduct towards students, professional athletes, school officials, parents, and members of the community as required by DH (Local)" and that "ECISD policy [standards 1.10 and 3.8 were] not violated when Ms. Esparza transmitted a nude photo of herself to her husband." Furthermore, the IHE concluded that "Esparza's transmission of her nude photo was a matter protected by marital privacy and privilege of the United States Constitution" and that "Esparza did not violate the standard for propriety and decency within the ECISD community." Finally, the IHE concluded that Esparza had "not failed to perform her duties in the scope of employment that a person of ordinary prudence would

10

have done under the same or similar circumstances" and that "Esparza's actions were not inconsistent with the continued existence of the employer-employee relationship." The IHE concluded that "good cause does not exist to terminate Ms. Esparza's term contract for the 2016-2018 school year."

**C. IHE's Recommendation & ECISD Board of Trustees' Action**

The IHE recommended that: all relief requested in Esparza's appeal be granted; her employment be reinstated; and ECISD reimburse Esparza for lost wages and benefits, if any. On January 10, 2017, the board of trustees for ECISD adopted the findings of fact contained in the IHE's recommendation. However, the board disagreed with the IHE's conclusion that good cause to terminate Esparza's contract was lacking. Therefore, the board terminated her employment contract.

As allowed by the education code, the board of trustees rejected several of the IHE's conclusions of law. *See id.* § 21.259(b)(1). Specifically, the board concluded that (1) Esparza violated Board Policy DH (Local) and the "Employee Standards of Conduct," which subjects an employee to termination if the employee's "use of electronic media . . . interferes with the employee's ability to effectively perform his or her job duties"; (2) constitutional right to privacy does not apply to Esparza's nude photo and does not provide protection for the consequences of the photo's release into the public; (3) it is irrelevant whether the initial transmission of the nude photo was protected by a constitutional right to marital privacy and privilege; (4) Esparza violated the standard for propriety and decency within the ECISD community; and (5) by violating board policy,

11

Esparza was subject to termination, and the board retains the authority to make the ultimate determination of whether board policy has been violated.[9]

In its decision, the board stated that "[t]he widespread distribution of Esparza's nude photograph and the publicity of the photo in the community media impaired her future effectiveness as a middle school principal and made it untenable for ECISD to continue to employ her." The board also stated the reason and legal basis for its rejection of to the IHE's determination regarding ineffectiveness and good cause to terminate Esparza:

> The Board rejects Conclusions of Law 11 and 12.[[10]] School boards retain the authority to make the ultimate determination of whether board policy has been violated. TEX. EDUC. CODE § 21.211(a)(1); *Montgomery ISD v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000). By violating Board policy, Esparza was subject to termination . . . . Moreover, separate and apart from Esparza's actions, it is undisputed that a nude photo of Esparza was widely circulated among students and parents at Barrientes Middle School and was widely publicized in the Edinburg community. This exposure clearly diminished Esparza's ability to perform her role as an administrator and authority figure over the middle school students.

*See id.* § 21.259(d) (requiring the board to "state in writing the reasons and legal basis for a change or rejection" of an IHE's findings or conclusions).

## D. The Commissioner

Esparza appealed the board's decision to the Commissioner arguing that the board's decision was arbitrary, capricious, unlawful and not supported by substantial evidence. *See id.* § 21.301(a). Esparza further argued that there was no good cause to

---

[9] The school board adopted the IHE's conclusions that Esparza did not violate Standards 1.10 or 3.8.

[10] The IHE's conclusions of law 11 and 12 provided that (1) Esparza's actions were not inconsistent with the continued existence of the employer-employee relationship; and (2) good cause did not exist to terminate Esparza's term contract for the 2016-2018 school years.

terminate her contract and that ECISD failed to state any reason or legal basis for its changes to the IHE's conclusion of law. *See id.* § 21.259(d).

The Commissioner adopted the IHE's findings of fact in full but concluded that the board "properly changed the good cause determinations in the Recommendation when it concluded that the publicity given to the picture diminished [Esparza's] ability to perform her job." In his decision, the Commissioner stated:

> This case raises a question of first impression of whether in addition to changing the ultimate determination of whether or not good cause exists can a school board change an interpretive finding of fact that is closely related to the ultimate determination that good cause exist[s]. In the present case, the issue is can the school board change the determination that the dissemination of the photograph has undermined [Esparza's] ability to be a principal.

The Commissioner also noted that,

> The central issues in this case are whether there can be good cause to terminate a contract when there would be no question of an employee's loss of effectiveness but for the actions of a third party and whether a school district can change an interpretive fact that is closely related to an ultimate determination that good cause exists.

In explaining his decision, the Commissioner noted that determination of whether Esparza's effectiveness was affected by the photo had been deemed by the IHE to be a finding of fact[11] and opined that the 2011 amendments to the education code allowed the school board to change conclusions of law, as well as "interpretive facts" but not "hard facts." The Commissioner explained that the finding of fact regarding Esparza's effectiveness was an "interpretive fact" subject to the 2011 amendments, giving the board the ability to reject such a finding because it amounted to a conclusion of law regarding

---

[11] As noted, the IHE's finding regarding the impact of the dissemination of the photo on Esparza's effectiveness was listed under a section titled "Credibility Findings."

13

good cause for termination. Ultimately, the Commissioner concluded that the dissemination of Esparza's nude photo diminished her capacity to perform her role as a principal and affirmed the school board's decision.

The Commissioner issued its own conclusions of law, which included one stating that "[g]ood cause to terminate a term contract can exist even when the employee's effectiveness would not have been diminished but for the actions of a third party, even the illegal actions of a third party." Esparza sought judicial review of the Commissioner's decision. *See id.* § 21.307.

## E. The District Court

At the district court, Esparza argued that (1) there was no good cause to terminate her term contract with ECISD; (2) ECISD's changes to the IHE's conclusions of law are not supported by substantial evidence and are based on erroneous conclusions of law; (3) the Commissioner's decision that Esparza was terminated for future ineffectiveness is contrary to ECISD's basis in its notice of proposed termination, is not supported by substantial evidence, and is based on erroneous conclusions of law; and (4) multiple of the Commissioner's conclusions of law were not supported by substantial evidence and are based on erroneous conclusions of law. Subsequent to a hearing and without specifying the reason for its decision, the District Court reversed the Commissioner's decision upholding ECISD's board of trustees' termination of Esparza's term contract. The District Court also ordered that ECISD reinstate Esparza and reimburse her for lost wages and all benefits she may be entitled to. This appeal followed.

14

## III. DISCUSSION

By two issues, the Commissioner argues that the trial court erred when it rejected (1) the Commissioner's reasonable interpretation of the amendments to education code §§ 21.257(a-1) and 21.259(b)(1); and (2) his conclusion that good cause to terminate Esparza was supported by substantial evidence. In response, Esparza argues that there were no facts that established she was an ineffective administrator.

### A. Standard of Review

In our review of the district court's judgment, we focus, as did the district court, on the decision of the Commissioner. *See* TEX. EDUC. CODE ANN. § 21.307; *Davis*, 34 S.W.3d at 562; *Matthews v. Scott*, 268 S.W.3d 162, 172 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). We may reverse the Commissioner's decision only if the decision is not supported by substantial evidence or if the conclusions of law are erroneous. *Davis*, 34 S.W.3d at 562; *see* TEX. EDUC. CODE ANN. § 21.307(f); *Matthews*, 268 S.W.3d at 172; *see also* TEX. GOV'T CODE ANN. § 2001.174; 19 TEX. ADMIN CODE ANN. § 157.1073(h). "Substantial evidence review is a limited standard of review, requiring 'only more than a mere scintilla [of evidence],' to support an agency's determination." *Davis*, 34 S.W.3d at 566; *Hammack v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 713, 725 (Tex. App.—Austin 2004, pet. denied) (noting that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see Peaster Indep. Sch. Dist. v. Glodfelty*, 63 S.W.3d 1, 5 (Tex. App.—Fort Worth 2001, no pet.) ("Substantial evidence review is a limited standard that gives great deference to an agency in its field of expertise . . . ."). "Essentially, this is a rational-basis test to determine, as a matter of law,

whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.). If, based on the evidence as a whole, reasonable minds could have reached the same conclusion as the Commissioner, then the Commissioner's decision is supported by substantial evidence. *Nelson v. Weatherwax*, 59 S.W.3d 340, 343 (Tex. App.—Fort Worth 2001, pet. denied); *see Glodfelty*, 63 S.W.3d at 5.

Whether an agency's determination meets the substantial evidence standard is a question of law. *Davis*, 34 S.W.3d at 566. Ultimately, we are concerned not with the correctness of the agency's decision, but its reasonableness. *Jenkins*, 537 S.W.3d at 149; *see Webworld Mktg. Grp., L.L.C. v. Thomas*, 249 S.W.3d 19, 25 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (noting that an agency's decision is arbitrary and capricious if the agency did not "genuinely engage in reasoned decision making"). Although substantial evidence is more than a mere scintilla, the evidence in the record may preponderate against the agency decision and still amount to substantial evidence supporting the decision. *Tex. Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984); *N. E. Indep. Sch. Distr. v. Riou*, 581 S.W.3d 333, 340 (Tex. App.—San Antonio 2018, pet. granted). Our review, like the district court's, is limited to the evidentiary record made at the local level and any evidence taken by the Commissioner. TEX. EDUC. CODE ANN. § 21.307(e); *Riou*, 581 S.W.3d at 340; *see Ysleta Indep. Sch. Dist. v. Meno*, 933 S.W.2d 748, 751 n.5 (Tex. App.—Austin 1996, writ denied) (noting that, under substantial evidence review, "[t]he reviewing tribunal is restricted to [the] record, save in extraordinary circumstances, and it may not re-weigh the evidence, find facts[,] or substitute its judgment for that of the original tribunal."). The Commissioner's reasoning

16

for his or her decision is immaterial if his or her conclusion is correct; thus, we will uphold the Commissioner's decision on any legal basis shown in the record. *Goodie v. Hous. Indep. Sch. Dist.*, 57 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see Tex. Emp't Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962) ("If the Commission's conclusion was correct, it is immaterial that it may have proceeded to the conclusion on an erroneous theory or may have given an unsound reason for reaching it.").

**B. Texas Education Code §§ 21.257(a-1) & 21.259(b)(1)**

A central issue to this appeal is whether the board was authorized to reject and modify the IHE's determination that Esparza's effectiveness was not affected by the dissemination of her nude photo, a determination the IHE labeled as a "credibility finding," without regard to whether the determination was supported by substantial evidence. *Compare* TEX. EDUC. CODE ANN. § 21.259(c) (providing that a school board may reject or change a finding of fact by the IHE only if it is not supported by substantial evidence) *with id.* § 21.259(b)(1) (providing that a school board may adopt, reject, or change a conclusion of law by the IHE) *and id.* § 21.257(a-1) (providing that a determination by the IHE "regarding good cause" for termination of a term contract is a conclusion of law and may be adopted, rejected, or changed by the board of trustees as provided by § 21.259(b)). To support its decision to terminate Esparza's contract, the school board determined that Esparza's future effectiveness was "impaired" as a result of the photo's dissemination in the community, contrary to the IHE's finding. The board also rejected the IHE's corresponding conclusion of law that no good cause existed and adopted its own contrary finding and conclusion of law. The Commissioner concluded that ECISD's board

17

was free to change the IHE's determination that Esparza's effectiveness was not affected by the photo's dissemination.

Before 2011, whether there was good cause to terminate a teacher's contract was generally a question of fact. *See Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 580 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Watts v. St. Mary's Hall*, 662 S.W.2d 55, 58 (Tex. App.—San Antonio 1983, writ ref'd n.r.e); *Tex. Emp'rs Ins. Ass'n v. Fowler*, 140 S.W.2d 545, 548 (Tex. App.—Amarillo 1940, writ ref'd); *see also Nelson*, 59 S.W.3d at 349–50; *Adams v. Aldine Indep. Sch. Dist.*, No. 054-R2-0410, 2010 WL 11545918, at *7 (Tex. Educ. Agency June 1, 2010) ("Good cause for terminating a teaching contract is also a finding of fact."). However, §§ 21.257 and 21.259 of the education code were amended in 2011 to provide that "a determination regarding good cause" to terminate a teacher's contract is a "conclusion of law" that a school board may adopt, reject, or modify. *See* Act of June 28, 2011, 82nd Leg., 1st C.S., ch. 8 (S.B. 8), §§ 13, 14, 2011 Tex. Gen. Laws 5463, 5467. Now, § 21.259 provides that a board may adopt, reject, or change the hearing examiner's "conclusion of law, including a determination regarding good cause for . . . termination," TEX. EDUC. CODE ANN. § 21.259(b)(1), and § 21.257 provides that a "determination by the hearing examiner regarding good cause for the . . . termination of a . . . term contract *is a conclusion of law* and may be adopted, rejected, or changed by the board of trustees or board subcommittee as provided by [§] 21.259(b)." *Id.* § 21.257(a-1) (emphasis added). This language is unambiguous; a determination by the IHE "regarding good cause" is treated as a conclusion of law and may be adopted, rejected, or changed by a school district's board without regard to whether the determination was supported by substantial evidence. *See id.* §§ 21.257(a-1), .259(b)(1); *see also Judson*

18

*Indep. Sch. Dist. v. Ruiz*, No. 04-13-00706-CV, 2015 WL 1501758, at *5 (Tex. App.—San Antonio Mar. 31, 2015, pet. denied) (mem. op.) ("Whether good cause to terminate a teacher's term contract exists is a question of law.").

The education code, however, does not define good cause as it relates specifically to the termination of an educator employed under a term contract. *See Guerra v. Santa Rosa Indep. Sch. Dist.*, 241 S.W.3d 594, 603 (Tex. App.—Corpus Christi–Edinburg 2007, pet. denied) (citing *Tave v. Alanis*, 109 S.W.3d 890, 894 (Tex. App.—Dallas 2003, no pet.)); *see also* TEX. EDUC. CODE ANN. § 21.156 (providing that good cause to terminate an educator employed under a *continuing* contract is "the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state"). Traditionally, the Commissioner has defined good cause to terminate a teacher's term contract by employing and citing the definition articulated by our sister court in *Lee-Wright*. *See Lee-Wright*, 840 S.W.2d at 580; *see also, e.g., Esparza v. Edinburg Consol. Indep. Sch. Dist.*, No. 017-R2-01-2017, 2017 WL 2324582, at *3 (Tex. Educ. Agency Mar. 17, 2017); *Adams*, 2010 WL 11545918, at *7; *Floyd v. Hous. Indep. Sch. Dist.*, No. 038-R2-203, 2003 WL 27375226, at *2 (Tex. Educ. Agency Mar. 28, 2003); *Woolworth v. Eagle Pass Indep. Sch. Dist.*, No. 119-R2-1291, 1998 WL 36011346, at *4 (Tex. Educ. Agency Jan. 1, 1998). Under this test, good cause to terminate a teacher's term contract exists if the employee (1) failed to perform duties in the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances; or (2) acted in a way inconsistent with the continued existence of the employer-employee relationship. *Lee-Wright*, 840 S.W.2d at 580. However, Texas appellate courts have not reiterated this standard or any other specific

standard when analyzing whether good cause existed to terminate a teacher's term contract. *See, e.g.*, *Miller v. Hous. Indep. Sch. Dist.*, 51 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (concluding that teacher's failure to report to work despite being ordered to do so was good cause for termination because it violated established school board policy, "which her contract defined as lawful cause for discharge"); *see also Nelson*, 59 S.W.3d at 349–50 (concluding that good cause for termination of *continuing* contract existed, without discussing whether there was a failure to meet the accepted standards of conduct for the profession in similarly situated school districts, when special education teacher violated school board's local policy against insubordination by failing to follow official directive from the principal); *Judson*, 2015 WL 1501758, at *6 (concluding that good cause for termination of term contract existed when counselor violated school board policy and violation of the policy subjected counselor to discipline, including possible termination).[12]

Here, whether there was good cause to terminate Esparza and whether the release of her nude photo interfered with her ability to effectively perform her job are two determinations that are indivisibly intertwined because the latter is subsumed in the former. The record includes a copy of ECISD's DH (Local) policy and Employee Standards of Conduct. The policy provides that, "If an employee's use of electronic media . . . interferes with the employee's ability to effectively perform his or her job duties, the employee is subject to disciplinary action, up to and including termination of employment." Further, the policy states that electronic media includes "all forms of

---

[12] We note that the facts presented by these cases would constitute good cause under the *Lee-Wright* test as well. *See Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 580 (Tex. App.—Houston [1st Dist.] 1992, no writ).

telecommunication, such as landlines, cell phones, and web-based applications." It is undisputed that Esparza used her cell phone to take the nude photo and transmit it to her husband via text message. In the notice for proposed termination, the school board informed Esparza that the public outcry concerning the publicity and dissemination of her nude photo, "as well as the notoriety within the Barrientes Middle School and greater Edinburg CISD school communities[,] have undermined [Esparza's] ability to be an effective administrator for the District to such an extent so as to constitute good cause for the termination of [her] term employment contract with the District." Thus, whether Esparza's use of electronic media (her cell phone) interfered with her ability to be effective, in violation of ECISD's policy, is a determination regarding good cause for termination. *See Miller*, 51 S.W.3d at 681–82; *Lee-Wright*, 840 S.W.2d at 580; *Watts*, 662 S.W.2d at 58 ("Disobedience of reasonable rules of the employer that are known to the employee constitute a just ground for discharge."); *see also Judson*, 2015 WL 1501758, at *6.

We conclude that whether Esparza's effectiveness was affected was a "good cause" determination as provided by the education code and, thus, a "conclusion of law" that ECISD's board was free to reject or modify without reference to whether that determination was supported by substantial evidence.[13] *See* TEX. EDUC. CODE ANN.

---

[13] The Commissioner concluded the school board's action was authorized by the education code because the determination regarding Esparza's effectiveness was a finding of "interpretive fact," which is akin to a conclusion of law, as opposed to a finding of "hard fact," which must be supported by substantial evidence. The Commissioner presents this same argument on appeal. However, this interpretation contradicts the plain language of the statute, which provides that "a determination regarding good cause" is a conclusion of law. *See* TEX. EDUC. CODE ANN. § 21.257(a-1). Accordingly, we reject this interpretation. *See Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404–05 (Tex. 2016) ("[W]e have long recognized that an agency's construction of a statute may be taken into consideration by courts when interpreting statutes, but *deferring* to an agency's construction is appropriate only when the statutory language is ambiguous."); *Tex. Emp't Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962) ("If the Commission's conclusion was

21

§§ 21.257(a-1), .259(b)(1); *Davis*, 34 S.W.3d at 566 ("[T]he label attached, 'finding of fact' or 'conclusion of law,' is not determinative; the focus is on whether the issue determined is ultimately one of policy . . . ."); *Banker v. Banker*, 517 S.W.3d 863, 870 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) ("Regardless of the label, the trial court's designation of a finding of fact or conclusion of law is not controlling on appeal."); *Hunter Indus. Facilities, Inc. v. Tex. Nat. Res. Conservation Comm'n*, 910 S.W.2d 96, 104 (Tex. App.—Austin 1995, writ denied) (explaining that "ultimate findings" concerning compliance with statutory standards under the Solid Waste Disposal Act have the same effect as a conclusion of law or mixed question of law and fact); *see also Judson*, 2015 WL 1501759, at *6 ("[T]he hearing examiner's 'findings' about which similarities and differences in Price's and Ruiz's conduct and circumstances are relevant to their discipline are conclusions of law, as is the ultimate conclusion of whether the decision to terminate Ruiz's contract was arbitrary and capricious").

Accordingly, the Commissioner's conclusion that ECISD's board was allowed to reject or modify the effectiveness impairment finding, without regard to whether the finding was supported by substantial evidence, was not erroneous. *See* TEX. EDUC. CODE ANN. § 21.307(f). We sustain the Commissioner's first issue.

**C. Analysis**

The questions now become whether (1) there was a scintilla of evidence—i.e., substantial evidence—in support of the school board's conclusion that Esparza's future

---

correct, it is immaterial that it may have proceeded to the conclusion on an erroneous theory or may have given an unsound reason for reaching it.").

effectiveness was impaired by the dissemination of her nude photo[14] and (2) whether the Commissioner's implicit conclusion that ECISD's decision was not arbitrary, capricious, or unlawful was erroneous.[15] *See id.* §§ § 21.303(b)(1), 21.307(f); *Davis*, 34 S.W.3d at 566 ("Whether an agency's determination meets the substantial evidence standard is question of law."); *Glodfelty*, 63 S.W.3d at 5.

Here, Esparza occupied the high-level position of principal for the middle school. *See* TEX. EDUC. CODE ANN. § 11.202 (providing that "[t]he principal of a school is the institutional leader of the school" and that the principal shall "assume the administrative responsibility and instructional leadership" at the school). The IHE's undisputed findings of fact adopted by the board and the Commissioner include findings that: Esparza's nude photo had been in circulation since before the end of the 2015–2016 school year; the photo "was being passed around some students and was also seen by some staff" in June of 2016; Esparza learned of the photo's existence in the public domain on June 14, 2016; a parent inquired or complained to the school about the photo on June 22, 2016; "there was zero community outcry or outrage due to the unauthorized dissemination of Ms. Esparza's nude photo" and "there was no media coverage about Ms. Esparza's nude

---

[14] We have previously observed that this constitutes good cause for termination under ECISD policy. While the school board was free to change the good cause determination without regard to whether it was supported by substantial evidence, *see* TEX. EDUC. CODE ANN. §§ 21.257(a-1), 21.259(b)(1), the board's new conclusion is required to be supported by substantial evidence. *See id.* § 21.303(b)(1) (providing that the Commissioner may not substitute his or her judgment for that of the board unless the board's decision is not supported by substantial evidence or is arbitrary, capricious, or unlawful).

[15] The conclusion that there was good cause for Esparza's termination was made by ECISD's board, and the Commissioner reviewed this decision for substantial evidence and to determine whether the decision was arbitrary, capricious, or unlawful. *See* TEX. EDUC. CODE ANN. § 21.303(b)(1); *Miller v. Hous. Indep. Sch. Dist.*, 51 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). By affirming the board's decision, the Commissioner implicitly concluded that the board's conclusion was supported by substantial evidence and that its decision was not arbitrary, capricious, or unlawful. *See Miller*, 51 S.W.3d at 681–82.

photo" prior to June 23, 2016; the story of the disseminated nude photo was reported on various media outlets; Gutierrez "received calls, texts, or emails from several media sources" on June 29, 2016; the photo had gone "viral" by July 20, 2016; and ECISD sent Esparza the notice of her proposed termination on August 25, 2016.[16]

Based on this record, we conclude that reasonable minds could disagree as to whether the photo's dissemination among the students and community interfered with Esparza's future ability to effectively perform her job duties so as to constitute good cause to terminate her contract. *See Glodfelty*, 63 S.W.3d at 5; *Nelson*, 59 S.W.3d at 343. It was reasonable for the school board to infer from the escalating media coverage and the fact that the photo had recently "gone viral" that the disruption and distraction from the photo would continue and interfere with Esparza's ability to effectively perform her job duties, in violation of ECISD's policy. *See Davis*, 34 S.W.3d at 565 (noting that, under the statutory scheme in the education code, "a school board must be the ultimate interpreter of its policy, subject to the limits established by the Legislature in its provisions for administrative and judicial review"); *Pope v. Perrin-Whit Consol. Indep. Sch. Dist.*, No. 145-R2-397, 1997 WL 35411135, at *1–3 (Tex. Educ. Agency Jan. 1, 1997) (noting that knowledge among students, faculty, and community of teacher's flirting with two students supported finding that her effectiveness was impaired); *see also* TEX. EDUC. CODE ANN. § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."); *Ball v.*

---

[16] Because the hearing examiner is the sole judge of the witnesses' credibility and the weight to be given to their testimony, we do not consider the testimony of ECISD's witnesses regarding Esparza's ineffectiveness in our analysis. *See Davis*, 34 S.W.3d at 567. We must assume, consistent with the IHE's findings, that she did not find the testimony to be credible. *See id.*; *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 373 (Tex. 2000).

*Kerrville Indep. Sch. Dist.*, 504 S.W.2d 791, 795–96 (Tex. App.—San Antonio 1973, writ ref'd n.r.e.) ("The Legislature has, thus, not only delegated to school authorities the function of determining disputes arising from the termination of teacher's contracts, but has, without equivocation, implemented its intention to keep such disputes in the hands of those knowledgeable in school matters by declaring that the appeal to the courts authorized by the statute shall be under the substantial evidence rule."). It is also reasonable to conclude based on the nature of Esparza's employment (a principal in charge of a school caring for teenage children), the nature of the photo (a voluntarily taken naked picture), and the group that circulated the picture (students, teachers, and the school's community) that the distraction would continue to increase and the media attention and parental inquiries and complaints would persist and increase, and that this would impair Esparza's future effectiveness. Accordingly, we conclude that the Commissioner's decision was supported by substantial evidence and not erroneous. *See* TEX. EDUC. CODE ANN. §§ 21.202, 21.307(f); *Davis*, 34 S.W.3d at 565; *Jenkins*, 537 S.W.3d at 149; *Tave*, 109 S.W.3d at 894; *Watts*, 662 S.W.2d at 57; *see also Judson*, 2015 WL 1501758, at *6.

We also conclude that the Commissioner did not err when he implicitly concluded that ECISD's decision was not arbitrary, capricious, or unlawful. *See* TEX. EDUC. CODE ANN. § 21.303(b)(1). An agency decision is arbitrary and capricious if it fails to "manifest a rational connection to the facts," *see Oncor Elec. Delivery Co. v. Pub. Util. Comm'n of Tex.*, 406 S.W.3d 253, 265 (Tex. App.—Austin 2013, no pet.), or if the agency did not "genuinely engage[] in reasoned decision making." *See City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994) (holding that one of the ways in which

25

an agency's decision may be arbitrary and capricious is if the agency reaches a "completely unreasonable result," even after properly considering legislatively mandated factors); *Webworld Mktg. Grp., L.L.C. v. Thomas*, 249 S.W.3d 19, 25 (Tex. App.— Houston [1st Dist.] 2007, no pet.). In its decision, the school board explained that the dissemination of Esparza's nude photo and the publicity it started to receive "impaired [Esparza's] future effectiveness as a middle school principal and made it untenable for ECISD to continue to employ her." This indicates a rational connection to the facts and reasoned decision making. *See City of El Paso*, 883 S.W.3d at 184; *Oncor Elec.*, 406 S.W.3d at 265; *Thomas*, 249 S.W.3d at 25. Accordingly, we must uphold the Commissioner's decision. *See* TEX. EDUC. CODE ANN. §§ 21.303(b)(1); 21.307(f); *Matthews*, 268 S.W.3d at 172.

Esparza argues that a third party was responsible for the photo's dissemination and, therefore, there can be no good cause to terminate her. We disagree. While it is unfortunate that Esparza was a victim of a crime, the fact remains that there is a naked picture of Esparza voluntarily taken circulating among the students and the school's community. As noted, reasonable minds could conclude this would detrimentally affect Esparza's ongoing effectiveness as a principal, and ECISD's DH (Local) policy covers the scenario here. Whether DH (Local) policy was violated is ultimately determined by the school board, *see Davis*, 34 S.W.3d at 565; *see also Judson*, 2015 WL 1501758, at *6 ("The school board retains the authority to make the ultimate determination of whether board policy has been violated and whether the violation is good cause to terminate a contract."), and we cannot conclude that its determination was arbitrary, capricious, or unlawful under these circumstances.

Esparza also argues that she did not receive notice that she was being terminated for her "future" ineffectiveness. Again, we disagree. The board's notice of termination mentions only "effectiveness," without differentiating between current or future ineffectiveness, and the notice can be properly read as referring to both. We conclude that, by listing "effectiveness" in the notice of proposed termination, the board put Esparza on notice that her current and future effectiveness was at issue.

Finally, Esparza also argues that there is no evidence that she was ineffective as a result of the photo because the photo was in circulation on social media and the internet long before she was suspended and before the end of the prior school year. We find Esparza's argument unpersuasive for the reasons set forth above. *See Matthews*, 268 S.W.3d at 175–76.

We sustain the Commissioner's second issue.[17]

## IV. CONCLUSION

We reverse the district court's judgment and render judgment affirming the Commissioner's decision.

DORI CONTRERAS
Chief Justice

Concurring Opinion by Justice Hinojosa.

Delivered and filed the
19th day of March, 2020.

---

[17] Because the Commissioner's second issue is dispositive, we need not reach any of the other issues presented in this appeal. *See* TEX. R. APP. P. 47.1.

27